Argued March 31; affirmed October 10, 1933

# CAPOS *v.* CLATSOP COUNTY

(25 P. (2d) 903)

*A. W. Norblad,* of Astoria (Norblad & Norblad, of Astoria, on the brief), for appellant.

*F. M. Franciscovich,* of Astoria (Hesse & Franciscovich and F. P. Leinenweber, District Attorney, all of Astoria, on the brief), for respondent.

ROSSMAN, J. The complaint alleges that March 5, 1928, an information of felony was filed in the justice court for the precinct of Astoria, accusing our present plaintiff of the crime of setting up a still for the purpose of manufacturing intoxicating liquor; that, later, he was arrested and brought before the justice of the peace; that, having deposited the sum of $2,500 cash in lieu of bail, he was released from custody; that no preliminary examination occurred; that no order was entered holding him to the grand jury; that March 10, 1928, the grand jury of Clatsop county indicted him of the crime of setting up a still for the purpose of manufacturing intoxicating liquor; and that March 28, 1928, the justice of the peace, "without any right or warrant or authority of law, or otherwise, and without the knowledge and consent of said George Capos", delivered to the county clerk of Clatsop county the aforementioned sum of $2,500. We quote further from the complaint:

"Plaintiff alleges that said crime alleged in said indictment and the said crime alleged in said information of felony filed in the justice of the peace court as aforesaid was and is the same identical crime charged and none other. Plaintiff further alleges that he was never arrested upon the charge contained in said indictment, nor was he ever arraigned upon the charge contained therein, nor was he ever called upon or notified or required to plead thereto, nor did he ever enter any plea or answer thereto, nor was any plea or answer ever entered in the journal or record of said court, nor was he ever informed of the nature and cause of the accusation against him and given a copy thereof as required by the constitution and laws of Oregon. Plaintiff further alleges that neither he personally nor by counsel voluntarily or otherwise, verbally or in writing, appeared in any manner in said circuit court in the action * * *."

Continuing, the complaint avers that neither the plaintiff nor any one on his behalf deposited any bail money in the circuit court; that no time was ever set by the circuit court for the trial of the charge stated in the indictment; that the circuit court never issued any warrant for his arrest; that no order was ever made by that court fixing the bail upon the indictment until after the forfeiture of bail which the complaint alleges occurred in the following manner: April 4, 1928, the circuit court made the following order:

"This matter coming on to be heard on the 4th day of April, 1928 and it appearing to the court that an indictment was returned by the Grand Jury of Clatsop County, Oregon dated March 10, 1928, charging the above named defendant George Capos, with the crime of having a still set up for the purpose of manufacturing intoxicating liquor; and it further appearing to the court that April 4th, 1928, was set as the date of trial upon said indictment; Now, on this day, came the

State of Oregon by F. P. Leinenweber, District Attorney, and the defendant, George Capos, failed and neglected to appear for trial and no sufficient cause or excuse having been shown by said defendant George Capos, for his failure to appear and the defendant, George Capos, though duly called three times at the Court House door by Harley J. Slusher, Sheriff of Clatsop County, came not, but made default;

"And it appearing to the Court that the defendant, George Capos, had heretofore by an order of this court duly made in its Journal being admitted to bail in the sum of $2,500.00 and that the defendant George Capos, had heretofore duly presented cash bail in accordance with said order in the sum of $2,500.00 which was duly accepted and filed with the clerk of Clatsop County, Oregon;

"Now therefore, it is ordered and adjudged by this court that said undertaking be and the same is hereby forfeited to the State of Oregon; and it is further ordered that the fact of non-appearance of the defendant, George Capos, be entered in the Journal of this court; and, upon motion of F. P. Leinenweber, District Attorney of Clatsop County, Oregon, that a bench warrant issue for the apprehension and arrest of said defendant.

"Dated this 4th day of April, A. D. 1928.

C. H. McColloch, Judge''.

After the entry of that order the circuit court, according to the complaint, endorsed upon the indictment the following:

"State of Oregon }ss
County of Clatsop }

The within named defendant may be admitted to bail in the sum of $5,000.00.

C. H. McColloch,
Circuit Judge''.

"State of Oregon ⎫ ss
County of Clatsop ⎰

It is hereby ordered that a bench warrant issue for the apprehension of the within named defendant.

Dated this 4th day of April, 1928.

C. H. McColloch,
Circuit Judge".

April 6, 1928, the county clerk, in compliance with the aforementioned order of bail forfeiture, so the complaint alleges, delivered the bail money to the county treasurer of Clatsop county who later disbursed it in the manner required by section 15-904, Oregon Code 1930. The complaint concludes with an averment that the plaintiff's demand for the return of the $2,500 was refused. The defendant's demurrer to the complaint, on the ground that it did not allege a cause of action, was sustained.

It will be observed that the complaint alleges that the defendant justifies its possession of the $2,500 bail money by the order of bail forfeiture, and it will also be observed that the present proceeding constitutes a collateral attack upon that order. The basis of the plaintiff's contentions that he is entitled to the return of the $2,500 may be summarized thus: (1) Since he neither deposited in the circuit court the $2,500 bail money which he had previously deposited in the justice court, nor authorized its transfer, and since the time is long past within which the charge in the justice court may be prosecuted, he is entitled to its return; (2) since the order of bail forfeiture entered by the circuit court does not affirmatively recite that he was arraigned and entered a plea in the circuit court, the proceedings which culminated in the bail forfeiture failed to meet the demands of due process of law.

■■ We shall first consider the contention that the justice court had no authority to transfer to the circuit court, after the plaintiff's indictment by the grand jury, the bail money previously deposited with the justice court. Section 13-2205, Oregon Code 1930, which is a portion of the chapter of our laws making provision for the preliminary examination of those brought before the justice courts charged with the commission of a felony, directs that if the justice adjourns his court before affording the accused a hearing he must discharge the accused "upon his giving bail or depositing money in lieu thereof, as provided in this code, as security for his appearance at the time to which the examination is adjourned". Section 13-1314, Oregon Code 1930, provides:

"Bail is put in by a written undertaking, executed by two sufficient sureties, and acknowledged before the court or magistrate taking the same. It may be substantially in the following form: (1) Before indictment: An order having been made on the —— day of ———, 19— * * that C. D. be held to answer upon a charge of * * we * * do hereby undertake that the above named C. D. shall appear and answer the charge above mentioned, in whatever court it may be prosecuted * * ''.

Section 13-1328 provides:

"The defendant, at any time after an order admitting him to bail, instead of giving bail, may deposit with the clerk of the court at which he is held to answer * * the sum of money mentioned in the order * * ''.

The words "before indictment" appearing in the form of bail undertaking suggested in section 13-1314 indicate that this form is to be used when the magistrate releases the accused upon bail before the preliminary examination has begun or has been concluded,

but the words "an order having been made * * that C. D. be held to answer" indicate that the form is intended for use only after an order has been entered holding the accused to answer to the grand jury. If the form is intended for use in the latter instance only, then no form is provided by our code for the convenience of a magistrate who releases an accused upon bail when a delay intervenes before a preliminary examination begins. Such delays are common. It would seem strange that the code would provide a form for bail undertakings where the accused is held to answer, and also forms for use after an indictment has been returned and yet fail to provide a form to serve a purpose which constantly presents itself; that is, the release of an accused where a delay occurs before the preliminary hearing. If bail deposited in the justice court merely assures the accused's appearance in that court, as the plaintiff contends, then the return of an indictment before a preliminary hearing occurs would effectively release the sureties or the cash bail because the return of the indictment terminates the jurisdiction of the justice of the peace over the defendant. Thus, the magistrate would be compelled to return the bail and the public authorities would be compelled to search once more for the defendant. It is our belief that the prevailing practice requires bail money deposited prior to preliminary examination to assure the accused's appearance in whatever court the charge may be prosecuted, so as to make provision for his appearance in the circuit court in the event of his indictment by the grand jury prior to preliminary examination, and we believe that this practice had its inception in the form of bail undertaking suggested by section 13-1314, Oregon Code 1930. We are of the opinion that this

practice is warranted by the section of our code just mentioned. Such being our belief, the justice of the peace was bound to remit the bail money to the circuit court after the defendant had been indicted upon the same charge which was pending against him in the justice court at the time he made the bail deposit. *Erickson v. Marshfield,* 94 Or. 705 (186 P. 556), upon which the plaintiff relies, can readily be distinguished from our present case. In that case one Foote was arrested upon a charge of maintaining a common nuisance. Erickson deposited $100 to assure his appearance upon the charge just mentioned. Later that charge was dismissed and still later Foote was accused of selling intoxicating liquor. Having been found guilty upon that charge and having been sentenced to pay a fine of $100, the city proposed to appropriate the bail deposited by Erickson upon the first charge as payment of the fine. Manifestly, such could not be done. Erickson had not subjected his $100 to any liability in the second case. In our instant case plaintiff's indictment by the grand jury was not the beginning of a new case but merely a development of the old one.

In support of the plaintiff's second contention, he argues: (1) that the order of bail forfeiture neither states that he was arraigned in the circuit court nor that he entered a plea there; (2) that, in the absence of such statements in the order, we cannot infer that he was arraigned or entered a plea; (3) that an arraignment and the taking of a plea are essential elements of due process of law; (4) that an order of bail forfeiture which fails to affirmatively state that an arraignment and the entry of a plea occurred is void; and (5) that void orders are subject to collateral

attack. As authority for his contention that an arraignment and the entry of a plea are necessary in order to confer jurisdiction upon a court to forfeit bail, he cites *State v. Walton,* 50 Or. 143 (91 P. 490, 13 L. R. A. (N.S.) 811); *State v. Walton,* 51 Or. 574 (91 P. 495), and *State v. Donahue,* 75 Or. 409 (144 P. 755, 147 P. 548, 5 A. L. R. 1121). As authority for his contention that the order of bail forfeiture must embrace a statement that the arraignment occurred, and that a plea was entered, he cites, in addition to the three cases just mentioned, *State v. Keep,* 85 Or. 265 (166 P. 936); *Schmid v. City of Portland,* 83 Or. 583 (163 P. 1159); *Cameron v. Burger,* 60 Or. 458 (120 P. 10); *Knapp v. Wallace,* 50 Or. 348 (92 P. 1054, 126 Am. St. Rep. 742); *Harris v. Sargeant,* 73 Or. 41 (60 P. 608); *Odell v. Campbell,* 9 Or. 298; *Tustin v. Gaunt,* 4 Or. 305; *Hunsaker v. Coffin,* 2 Or. 107.

The two Walton cases relied strongly on *Crain v. United States,* 162 U. S. 625 (40 L. Ed. 1097, 16 S. Ct. 952), for their conclusion that due process of law demands an arraignment and the entry of a plea prior to trial and that a judgment of conviction which fails to clearly state that such preliminaries took place must be reversed on appeal. The judgment of conviction in the first of the Walton cases stated that a jury was sworn to try "the issue joined", but our decision refused to infer from the language quoted that an arraignment had occurred and that a plea had been entered. *State v. Donahue,* supra, cited as authority, for the statement which it contains in harmony with the aforementioned holding of the two Walton cases, those two decisions. Two years before the decision in *State v. Donahue* the Federal Supreme Court announced its decision in *Garland v. State of Washington,*

232 U. S. 642 (58 L. Ed. 772, 34 S. Ct. 456), wherein it sustained a judgment of conviction even though no arraignment had occurred and the defendant had not formally entered a plea. The decision dwelt upon the facts that the record showed that the defendant was aware of the charge filed against him and that his attitude at the trial was equivalent to a plea of not guilty. It overruled those portions of the decision in *Crain v. United States* which demanded that the record must affirmatively disclose that an arraignment had occurred and a plea had been entered. In *State v. Harvey,* 117 Or. 466 (242 P. 440), we sustained a judgment of conviction which did not state that the defendant had been arraigned nor that he had entered a plea. The record disclosed that a trial had actually occurred and that the defendant was familiar with the criminal complaint filed against him. The decision in that case made frequent mention of *Garland v. State of Washington.* From our decision we quote:

"A few among the many cases holding that arraignment and plea may be waived are * * . In view of the foregoing, we hold that the failure of the record to show affirmatively that the defendant entered his plea to the charge contained in the complaint does not constitute reversible error."

Our holding in that case warrants the conclusion that a judgment of conviction which does not state whether an arraignment occurred and a plea was entered does not demand reversal if the record discloses that a trial occurred and that the defendant was familiar with the charge stated in the indictment.

It will be observed that in the foregoing cases the attack upon the judgment was a direct one by the process of appeal. When the attack is direct no errors

or irregularities to which proper objection was made are free from scrutiny. A record under direct attack does not import verity. No presumptions arise to support it and it can survive only in the event that it speaks the truth and is free from error. But the attack in the instant case is not a direct one by appeal, but a collateral one. This is not a motion to vacate nor a proceeding to reverse the order of bail forfeiture. Its purpose is to ignore it as a nullity. Let us now consider some of the authorities which the plaintiff contends warrant a finding that the order is a nullity. We find nothing in *State v. Keep,* supra, which is applicable to our present problem. In *Schmid v. City of Portland,* supra, the effort of the city to collaterally attack a judgment of the circuit court failed. The decision declared:

"A judgment which is void on its face may be collaterally attacked; but a party to a judgment cannot collaterally impeach it for errors of law or irregularities in practice which do no more than to render it merely erroneous or voidable. * * Subject to certain qualifications the general rule is that in a collateral proceeding a judgment imports verity and as between the parties is conclusive evidence of the facts recited in it."

*Cameron v. Burger,* supra, was an action instituted by the district attorney to recover upon a bail bond filed in the Portland municipal court to assure the appearance of one charged with a crime. The portion of the decision upon which the plaintiff relies follows:

"The facts conferring jurisdiction upon it should be alleged. It should further appear by averment that the court made the order of commitment; that in pursuance of this order of commitment the undertaking of bail was given. * * "

These declarations, however, were preceded by the observation:

"The municipal court of the city of Portland, being a court of limited jurisdiction, the facts conferring jurisdiction upon it should be alleged."

In *Harris v. Sargeant,* supra, a collateral attack upon a judgment of the circuit court succeeded because the judgment itself revealed defective service of the summons by the sheriff upon those against whom judgment was given. *Tustin v. Gaunt* was an unsuccessful collateral attack upon an order of a county court possessing general jurisdiction over the subject-matter of the order. We quote from the decision:

"These proceedings and orders of the county court, in the matter of the estate of Tustin, deceased, are 'judicial records', as they come clearly within this definition of the code; and whenever such a record is produced in evidence, during the progress of the trial, to establish some right in the party producing it, and is thus brought in question collaterally, it may be attacked or impeached by the opposite party, and the presumption arising therefrom overcome by evidence of a want of jurisdiction in the court in which such record was made, for the record of any court is absolutely void whenever it appears from such record that there was a want of jurisdiction in the court, either over the subject-matter or parties in interest, to make such record. (Civ. Code, § 732; Hahn v. Kelly, 34 Cal. 407). When, however, the record of a court of general jurisdiction comes in question, a want of jurisdiction cannot be shown by evidence *aliunde* the record, and 'no facts or circumstances which do not appear upon the face of what constitutes the record', designated in our code as the judgment-roll, can be used for such purpose, for the reason that 'the record of a court of superior jurisdiction imports absolute verity, and cannot, therefore, be collaterally impeached from without'. (Hahn v. Kelly, 34 Cal. 402). It may be asked, in this

connection, what is meant by a want of jurisdiction appearing upon the face of the record. We answer that a want of jurisdiction appears upon the face of the record 'whenever what was done is stated in the record, and which, having been done, is not sufficient in law to give the court jurisdiction'. In Hahn v. Kelly, the court said: 'We consider the true rule to be that legal presumptions do not come to the aid of the record, except as to acts or facts touching which the record is *silent*. When the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done'. 'That the law conclusively presumes the jurisdictional facts in the case of a judgment of a court of general jurisdiction, so long as the record shows nothing to the contrary, but does not make any such presumption in favor of the judgments of courts of limited jurisdiction. The jurisdiction of such courts, not being presumed, must depend upon actual facts, which, of course, are open to dispute, and not concluded by the record, for if the jurisdictional facts did not exist, the court really had no jurisdiction, and its record is not, in the eyes of the law, an absolute verity, but a mere unauthorized narrative'. (30 Conn. 199)."

In *Hunsaker v. Coffin,* supra, the judgment of the trial court was reversed because the record showed defective service of summons.

Summarizing, we find that in *Schmid v. City of Portland* and *Tustin v. Gaunt* the collateral attacks failed because the attacked judgments did not themselves present any evidence of irregularities. Under such circumstances, that is, silence, inferences favorable and not unfavorable to the judgments were drawn. *Cameron v. Burger,* which was likewise a collateral attack, succeeded because the record failed to show that the municipal court, a court of inferior jurisdiction, had acquired jurisdiction. *Harris v. Sargeant,*

which was also a collateral attack, succeeded because the attacked judgment itself mentioned defective service of summons. *Hunsaker v. Coffin* was a direct attack upon the judgment by the process of appeal. It will also be observed that in the two Walton cases, as also in the Donahue case, the attack was direct by the process of appeal.

■ The rule to be adduced from the above holdings is well set forth in Freeman on Judgments (5th Ed.), § 383. From it we quote the following:

"Are the courts forced to conclude from a failure to fully set out the facts as to process, appearance or other matters of jurisdiction, that the proper steps to invest the court with power to adjudicate were not taken? Such a conclusion would be inescapable if the law required the record to detail the jurisdictional facts. For in that case it could be determined from a mere inspection of the record that the court acted without authority, or, if it did, in fact, proceed within its jurisdiction that competent evidence to sustain its judgment is wanting. * * * To conclude from a mere want or insufficiency of jurisdictional recitals in the record of a court of general jurisdiction that jurisdiction was not actually acquired would be, in effect, to presume against the record, whereas it is a rule of general application that every intendment consistent with the record of such courts will be indulged to sustain their proceedings and judgments. The rule is that upon collateral attack of a domestic court of general jurisdiction the want of jurisdiction or invalidity of the judgment must affirmatively appear upon the record itself, and until the contrary appears it will be presumed that the court had jurisdiction. Nothing will be intended to be out of the jurisdiction of a court of general jurisdiction but that which expressly appears to be so. The absence from the record of the necessary jurisdictional facts will not overcome the presumption of jurisdiction, and that papers which

ought to have been included in the judgment-roll are missing therefrom is not enough to make it affirmatively appear that the court had no jurisdiction. In the absence, therefore, of any showing in the record either one way or the other, a presumption arises in favor of the validity of the judgment of a court of general jurisdiction, and the existence of all matters going to the power of the court or tribunal to render the judgment.''

For a further statement to like effect of the rule which draws presumptions of regularity and validity in favor of the judgment of a court having jurisdiction, and which are not inconsistent with facts appearing upon the record when the judgment is attacked collaterally, see 15 R. C. L., Judgments, p. 875, § 353. The rule just mentioned has been many times applied by this court. In addition to the instances already cited, see *Glickman v. Soloman,* 140 Or. 358 (12 P. (2d) 1017); *Gatt v. Hurlburt,* 131 Or. 554 (284 P. 172); Id., 132 Or. 415 (286 P. 151); *In re Application of Loundagin,* 129 Or. 652 (278 P. 950); *Shaveland v. Shaveland,* 112 Or. 173 (228 P. 1090); *American Central Insurance Co. v. Weller,* 106 Or. 494 (212 P. 803); *Schlosser v. Beemer,* 40 Or. 412 (67 P. 299).

We find nothing in *Knapp v. Wallace,* 50 Or. 348 (92 P. 1054, 126 Am. St. Rep. 742), and *Odell v. Campbell,* 9 Or. 298, cited by the plaintiff, in conflict with the above. In those cases the courts refused to draw inferences of regularity in support of judgments subjected to collateral attack because the proceedings which had terminated in the judgments were not according to the course of the common law as in our present case, but were predicated upon special statutes prescribing the manner in which jurisdiction could be obtained over the defendant.

■■ Judgments in criminal proceedings are immune from collateral attack to the same extent as other judgments. 15 R. C. L. 871, § 347; 34 C. J., Judgments, p. 517, § 821. A judgment of bail forfeiture is as free from collateral attack as are other judgments. Authorities in support of the statements just made will be found collected in the footnote at 6 C. J., Bail, p. 1049. We shall refer to only two of them. From *Abel v. State of Oklahoma,* 79 Okl. 282 (193 P. 969, 20 A. L. R. 589): "The rule is well established that, where the court forfeiting an appearance bond has jurisdiction to declare a forfeiture, such forfeiture is conclusive evidence of its breach, and cannot be impeached by extrinsic evidence." From *State v. Morgan,* 136 N. C. 593 (48 S. E. 604), we quote:

"The fact of the defendant's failure to appear is conclusively established by the entry, and the respondents will not be heard to impeach the record, as it stands, in a collateral way, and a suit or *scire facias* founded on the forfeiture is a collateral proceeding. Their remedy, if they wished to put the truth of the matter in issue, was by motion to set aside or vacate the entry, or, as is sometimes said, to reverse the order of forfeiture. This is but the application of an elementary principle. A record imports absolute verity, and is conclusive concerning the matters to which it relates. So long as it stands unreversed, the recitals as to what was actually done in the court cannot be contradicted or varied except upon application to the court to correct the record so that it will speak the truth. * * * The very question under discussion has, we find, been frequently considered by the courts of other states, and they have, so far as we can ascertain, invariably decided that such a defense as that set up in this case cannot be entertained as a few extracts from some of those decisions will show."

 Reverting to the order of bail forfeiture, it will be observed that the record nowhere states that Capos was not arraigned nor does it indicate a neglect to receive a plea from him. On the contrary, the order of bail forfeiture is silent, unless the silence is dispelled by the statement contained in that order declaring, "Defendant George Capos failed and neglected to appear for trial". Since the word "trial" commonly implies that a charge made by the state has been placed in issue by a plea of not guilty, one naturally infers from the quoted language appearing over the signature of the circuit judge that the defendant had interposed a plea of not guilty. But casting aside this inference as unwarranted by the holding of *State v. Walton,* supra, let us assume that the record is silent. It will be observed from the authorities cited above that the silence serves the purpose of the state and not of the plaintiff in his collateral attack. It becomes the source from which inferences of regularity and validity arise for the support of the judgment. The circuit court had jurisdiction over the crime mentioned in the indictment (Article VII, § 9, Oregon Constitution), and, hence, we are required to presume that before entering the order of bail forfeiture Capos was properly arraigned and that he entered a plea of not guilty.

It follows from the above that the judgment of the circuit court is affirmed.

BEAN and BELT, JJ., concur.

CAMPBELL, J., concurs in the result.