Argued January 9, reversed and remanded June 12, 1963

IN THE MATTER OF THE ESTATE OF
MONA LaWANDA NELSON, DECEASED
HUGHES *v.* THE AETNA CASUALTY & SURETY
COMPANY

383 P. 2d 55

428

*James P. Cronan, Jr.,* Portland, argued the cause and filed briefs for appellant.

*Thomas H. Tongue, III,* Portland, argued the cause for respondent The Aetna Casualty & Surety Company. With him on the brief was Stephen E. Parker.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

LUSK, J.

Harold J. Hughes, petitioner in the court below, is seeking by this proceeding to be declared the son and lawful heir of Mona LaWanda Nelson, deceased.

The petitioner is the illegitimate son of the deceased. He was born July 16, 1924; was apparently abandoned in infancy by his parents and became an inmate of St. Anges Baby Home in Portland. On May 10, 1927, by decree of the Court of Domestic Relations for Multnomah County, he was declared to be the child of Mr. and Mrs. J. J. Hughes. He was reared in the home of his adoptive parents and never knew his natural mother. The question is whether the decree of adoption is void because of asserted procedural defects. If that be so, the relationship of mother and son between the petitioner and his natural mother has never been severed and he is her sole heir at law and entitled to take her estate.

The question arose in this way. Mrs. Nelson, nee Oatman, died intestate on February 6, 1957. She was survived by a brother, Ellis F. Oatman, and a sister,

Bernita O. Taylor. Her estate was probated in the District Court for Washington County and on September 4, 1957, an order of final settlement was entered, including an order of distribution of the estate to the brother and sister (since deceased) as her sole heirs. In March, 1961, the petitioner learned of his natural mother's death and that she had left an estate. After consulting an attorney, on June 26, 1961, he filed a motion to vacate the order of final settlement and allow objections thereto on the ground that the petitioner was the sole surviving heir at law and next of kin of the decedent. The petitioner invoked ORS 18.160① as authority for commencement of the proceeding thus belatedly. As the determination involved the title to real property, the district judge transferred the question to the circuit court. The Aetna Casualty & Surety Company (hereinafter referred to as Aetna), surety on the administrator's bond and respondent here, appeared in opposition to the objections and, after various proceedings unnecessary to be detailed, the court on April 9, 1962, entered an order denying the petitioner's motion to vacate the order of final settlement and overruling his objections thereto. From the order of April 9, 1962, the petitioner has appealed.

The adoption proceedings were commenced by the filing of a petition by Mr. and Mrs. Hughes which contained the following averments:

> "That Harold Joseph Oatman, infant, born July 16th, 1924, is and was a foundling, abandoned by both father and mother, said abandonment having

---

① ORS 18.160 The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect.

continued for more than one year last past; that said infant since said abandonment by both father and mother has been an inmate of and cared for by St. Agnes Foundling Asylum;

"That said petitioners desire to adopt the said infant in the manner provided by the laws of the State of Oregon;

"That the said petitioners are able to give said infant a suitable home, to care for, clothe and feed it, and to educate the said child;

"Said petitioners desire to give said infant all the advantages that a child of their own blood might have;

"That said petitioners further desire that the name of said infant be changed from Harold Joseph Oatman to Harold Joseph Hughes."

As required by statute (Oregon Laws 1921, ch 215), the petition was served on the Child Welfare Commission of Oregon, which filed a written report with the court recommending that the petition be granted. Included in the report is the following:

"The child was a ward of the St. Agnes Baby Home and was placed by that institution. He has been abandoned for more than one year preceding the filing of the petition. However since the St. Agnes Baby Home never acquired title, the year's abandonment next preceding the time of filing the petition is the basis upon which this proceeding is instituted:".

On the tenth day of May, 1927, St. Agnes Baby Home filed with the court its "Consent to Adoption", reading as follows:

"Harold Joseph Oatman, minor child, duly and regularly committed by the Court of Domestic Relations of Multnomah County, State of Oregon, to the St. Agnes Baby Home, petition having been filed by J. J. Hughes and M. E. Hughes for the adoption of Harold Joseph Oatman, said minor

child having been abandoned by both mother and father; the Child Welfare Commission of Oregon having consented to the adoption and recommended the same;

"It appearing to the said St. Agnes Baby Home that the petitioners for adoption are members of the Catholic Church in Montavilla, and that they are in good standing in the community; now,

"THEREFORE, said St. Agnes Baby Home hereby consents to and recommends that said petition for adopted [sic] be granted."

As previously stated, the court entered a decree of adoption on May 10, 1927. There are no findings other than recitals in the decree to the effect that the petitioners were of sufficient ability to bring up the minor child, Harold Joseph Oatman, properly, and that it was fit and proper that such adoption should take effect and that the Child Welfare Commission of Oregon had investigated the condition of the parties and recommended that the petition be granted. The record fails to disclose that notice of the proceeding was given to the minor child's natural mother.

■■ The question for decision is governed by two fundamental principles. One is that the right of adoption "being in derogation of common law, is a special power conferred by statute, and the rule is, that such statutes must be strictly construed." *Furgeson v. Jones,* 17 Or 204, 217, 20 P 842, 11 Am St Rep 808, 3 LRA 620. See, also, *Volz et ux v. Abelsen,* 190 Or 319, 324, 224 P2d 213, 225 P2d 768, and cases there cited. The other principle is that the court in adoption proceedings is exercising a special statutory power not according to the course of the common law, and when its decree is called in question, even collaterally, no presumptions in favor of jurisdiction are indulged, but the facts necessary for jurisdiction must appear af-

firmatively, on the face of the record. *In re Estate of Myers,* 197 Or 520, 524–525, 254 P2d 227, and cases there cited. It is otherwise with a court of general jurisdiction exercising its customary common law powers, for "it is a rule of general application that every intendment consistent with the record of such courts will be indulged to sustain their proceedings and judgments." Freeman on Judgments (5th ed) § 383, quoted with approval in *Capos v. Clatsop County,* 144 Or 510, 523, 25 P2d 903, 90 ALR 289.

In addition, it is to be observed that the court of domestic relations for Multnomah county was in 1927 a court of special and limited jurisdiction, dealing solely with the problems of dependent, delinquent and neglected children. Oregon Laws 1920, Special Session, Chapter 2.[2] To such a court apply the same rules respecting the proof of jurisdiction when its judgment is attacked as in the case of a court of record exercising special statutory powers not according to the course of the common law. *Capos v. Clatsop County,* supra, 144 Or at 522.

The statutes governing adoption in effect in 1927 are to be found in Oregon Laws 1920. The parties seem to have assumed that the proceedings with which we are here concerned were taken pursuant to sections of the statute which provided for the adoption of children who were, either by commitment or otherwise, in the care of a child caring agency. These provisions will now be considered.

Oregon Laws 1920, section 9809, provided for permanent and temporary commitments by competent

[2] This court was abolished in 1929 and its jurisdiction was vested in the circuit court for Multnomah county to be exercised by the circuit judge sitting in the department of domestic relations. Oregon Laws 1929, ch 183.

courts of dependent or delinquent children to appropriate state and county institutions or suitable private child caring agencies. Temporary commitments were to be made "when the court for good and sufficient reasons decides that final adjudication of the case must be delayed, or that the child or children involved can reasonably be expected to soon return to ordinary home conditions in their own families"; and, in such case, guardianship of the persons of the children, it was provided, "shall remain with the court." Permanent commitments included "guardianship of the persons of such children."

The following sections of Oregon Laws 1920 relating to child caring agencies are pertinent: Such agencies to which dependent or delinquent children were committed by a court of competent jurisdiction through a *permanent* order could consent to the adoption of such children, § 9828. They could receive needy or dependent children from their parents or legal guardians for special, temporary or continued care. The parents or guardians might sign releases or surrenders giving to such agencies guardianship and control of such children, but such releases did not surrender the right of such parents or guardians in respect to the adoption of such children, nor entitle the agency to give consent to the adoption of such children, unless the release or surrender expressly recited that it was given for the purpose of adoption and that any entire severance of family ties by adoption, or otherwise, should be accomplished only by the order of a court of competent jurisdiction, § 9829.

Section 9830 provided:

"In the adoption of a ward of a private agency, society or institution, *to give formal consent to such adoption, it shall be required that such organi-*

*zation shall file with the clerk of the court in which
the adoption proceedings are pending, two docu-
ments as follows: (1) A certified copy of an order
of a court of competent jurisdiction formally and
permanently assigning the child to its guardian-
ship, or, for the information of the court, a copy
of a written surrender from a parent or parents
or a guardian;* and written formal consent by the
organization to the proposed adoption, which con-
sent shall show that sufficient and satisfactory in-
vestigation of the adopting parties has been made,
and which consent shall recommend that the peti-
tion for adoption be granted." (Italics added.)

■ The requirements of this section were not com-
plied with. Neither of the documents designated was
filed with the clerk of the court, so far as the record
discloses. That the defect is jurisdictional there can be
no doubt, for the purpose to be accomplished by com-
pliance with the statute was "to give formal consent
to such adoption." Consent to an adoption by parents
or guardian or other person *in loco parentis* is juris-
dictional, except where the statute does not require it.
*Burrell et ux v. Simpson,* 203 Or 472, 474-475, 280
P2d 368; *Williams et ux. v. Capparelli,* 180 Or 41,
44, 175 P2d 153; *Furgeson v. Jones,* supra, 17 Or at
218. As stated in the case last cited, "consent lies at
the foundation of statutes of adoption, and when it
is required to be given and submitted to the court,
the court cannot take jurisdiction of the subject-matter
without it." See, also, 2 Am Jur 2d 879, Adoption § 24.

It is argued by Aetna that

"* * * since St. Agnes had become the guardian
of the child the filing of a copy of its 'written
surrender' would have been sufficient without the
filing of a copy of the commitment order, and that
since its 'written surrender' was only 'for the in-

formation of the court,' any such requirement was not jurisdictional and, in any event, was amply satisfied by the filing of its 'Consent to Adoption,' which had the same legal effect as a written surrender."

■ The argument begs the question by assuming that St. Agnes Baby Home was authorized as guardian to give a "written surrender" of the child. The written surrender described in Oregon Laws 1920, § 9829 and referred to in § 9830, is an instrument to be signed by a parent or a guardian who has authority to consent to the adoption of a child. The pivotal question is whether the Home had such authority or, more precisely, whether the record of the adoption proceedings contains statutory proof of that fact. Had the mother of the child given a written surrender to the Home reciting that it was given for purposes of adoption, as provided in Oregon Laws 1920, § 9829, and had a copy of such surrender been filed with the clerk of the court, that would have been sufficient to make the Home's consent effective and would have satisfied the statute, just as would a certified copy of an order of permanent commitment of the child by the court. Neither of these documents being found in the record, the requisite evidence of consent to the adoption by someone authorized to give such consent is lacking. Whatever may have been the purpose of the legislature in using the phrase "for the information of the court," we think that the view is untenable that it was intended thereby to lessen the jurisdictional importance of the requirement that proof of the authority of the agency having custody of the child to consent to its adoption should be made in the manner set forth in the statute. Failure of the record to disclose a guardian lawfully authorized to give consent renders a decree

of adoption subject to collateral attack, *Norris v. Dunn,* 184 Ark 511, 43 SW2d 77.

◼ It is suggested that the adoption can be sustained under Oregon Laws 1907, Chapter 34, § 9, which appears as § 9827 of Oregon Laws 1920 and reads in part:

> "In any case where the court shall award a child to the care of any association or individual in accordance with the provisions of this act, the child shall, unless otherwise ordered, become a ward, and be subject to the guardianship of the association or individual to whose care it is committed. Such association or individual shall have the authority to place such child in a family home, with or without indenture, and may be made party to any proceeding for the legal adoption of the child, and may by its or his attorney or agent appear in any court where such proceedings are pending and assent to such adoption, and such assent shall be sufficient to authorize the court to enter the proper order or decree of adoption. * * *"

This section was part of an act relating to dependent, neglected and delinquent children. Under its provisions when the court made an "award" of a child to the care of an association, the child became a ward of the association and subject to its guardianship and the association was authorized to assent to the adoption of such child. This statute did not make the distinction between permanent and temporary commitments when conferring the authority to consent to adoption found in sections 9828-9830 of Oregon Laws 1920. The latter sections are all parts of Oregon Laws 1919, Chapter 405, which, like the 1907 Act, is an act relating to dependent and delinquent children. Section 11 of the 1919 Act provided that all laws in conflict with its provisions were repealed. It is obvi-

ous that section 9 of the 1907 Act is in conflict with the sections of the 1919 Act just mentioned, and nonetheless so because the former was included in Oregon Laws 1920 by the compilers thereof. It should be noted that Oregon Laws 1920 is not a codification, but a compilation.

■ It is also urged that the judge was empowered to consent to the adoption *in loco parentis* and that he did so. It is said that if there was no permanent commitment there was a temporary commitment, in which case guardianship remained with the court, as provided in § 9809, with authority to consent to the adoption. No such express authority is pointed to except that vested in the judge by section 9831, which authorized the judge to "record his consent to the adoption in loco parentis" when "foundlings or other abandoned children, whose parentage is unknown and who have not been assigned by a permanent court order to any child-caring organization, are presented for adoption."

Passing the objection that there is no allegation in the petition that the parents of the child were unknown and that, although the child was described in the petition as a foundling,[9] his name, Harold Joseph Oatman, is stated (which would seem to belie the notion that his parents were unknown), this contention cannot be sustained, because there is nothing to indicate that the judge did, in fact, undertake to exercise the authority to consent to the adoption. Aetna says that the evidence of his consent is that he signed the decree. On the contrary, he signed the decree, not as guardian, but as judge, exercising a judicial function. He did not give his consent, but he made an order.

We are asked to hold that this was a valid adop-

---

[9] A foundling is defined to be a newborn child, abandoned by parents, who are unknown. Munger v. Munger, 134 Ill App 512.

tion pursuant to section 9768, a part of the original adoption act of this state (Deady, General Laws of Oregon 1845-1864, page 692, § 62), but which was still in effect in 1927. That section read:

> "If either parent is insane or imprisoned in the state prison, under a sentence for a term not less than three years, or has *willfully deserted and neglected to provide proper care and maintenance for the child for one year next preceding the time of filing the petition,* the court shall proceed as if such parent were dead, and in its discretion may appoint some suitable person to act in the proceedings as next friend of the child, and give or withhold the consent aforesaid." (Italics added.)

■ There is internal evidence that, notwithstanding the attempt of St. Agnes Baby Home to give its consent to the adoption, the proceeding was not intended to be governed by the statute relating to adoption of children committed to an institution, but rather by the section just quoted. This conclusion is indicated by the allegation of the petition that the child had been abandoned by his parents for more than one year last past and the statement in the report of the Child Welfare Commission that "since the St. Agnes Baby Home never acquired title, the year's abandonment next preceding the time of filing the petition is the basis upon which this proceeding is instituted." The court had judicial knowledge of the contents of the report. *Dugger et ux v. Lauless,* 216 Or 188, 194, 338 P2d 660.

■ Although not in the exact language of the statute, it may be assumed that the averment that the parents of the child had "abandoned" him for a period of more than one year last past is the equivalent of a charge that they had "willfully deserted and neglected

to provide care and maintenance" for him. *Curtis v. State,* 48 Ga App 135, 172 SE 99; *State v. Clark,* 148 Minn 389, 182 NW 452; *In re Potter,* 85 Wash 617, 149 P 23; *Wright v. Fitzgibbons,* 198 Miss 471, 21 S2d 709; 2 Am Jur 2d 886, Adoption § 31. *Volz et ux. v. Abelsen,* supra, 190 Or at 323, is authority for the proposition that the allegations of a petition for adoption which substantially charged desertion by a parent are sufficient to give the court jurisdiction of the subject matter. Where desertion is the issue, consent of a parent is not required; the court is then to "proceed as if such parent were dead." Oregon Laws 1920, § 9768. In this case we are concerned only with the consent of the mother, since the child was illegitimate, § 9767. But notice of the proceeding to the mother was required, for § 9769 provided:

> "If a parent does not consent to the adoption of his child, the court shall order a copy of the petition and order thereon to be served on him personally, if found in the state, and if not, to be published once a week for three successive weeks in such newspaper printed in the county as the court directs, the last publication to be at least four weeks before the time appointed for the hearing. *Like notice shall also be published when the child has no parent living,* and no guardian or next of kin in this state. The court may order such further notice as it deems necessary or proper." (Italics added.)

If a notice must be published "when the child has no parent living," it apparently is required when desertion is charged and the court is to "proceed as if such parent were dead." Even though this is not a correct interpretation of the statute, due process required notice to the mother. As Mr. Justice BELT said in *Palm v. Smith et al,* 183 Or 617, 628, 195 P2d 708:

> "* * * It would seem not to require much argu-

ment that a mother—although her sins be as scarlet—should have the right to be heard in court on a matter affecting the welfare of her child."

See *Allen et ux v. Allen et al,* 214 Or 664, 684 (concurring opinion), 330 P2d 151; *Whetmore v. Fratello,* 204 Or 316, 321, 282 P2d 667; *Burrell et ux v. Simpson,* supra, 203 Or at 476; *Johnson v. Johnson et al,* 124 Or 480, 264 P 842. In *Child Saving Institute v. Knobel,* 327 Mo 609, 37 SW2d 920, 76 ALR 1068, the court, in an opinion which extensively reviewed the authorities, held that under a statute like Oregon Laws 1920, § 9768, while consent to an adoption by a parent who has deserted his child is not essential, still notice and an opportunity to be heard must be accorded him. The court quoted the following from *Sullivan v. The People,* 224 Ill 468, 475-476, 79 NE 695, 696:

> "A parent has the right to the custody of his child as against all the world, unless he has forfeited his right or the welfare of the child demands that he should be deprived of it. To divest him of his rights without notice and an opportunity to be heard is not only contrary to every principle of natural justice but is prohibited by the Constitution. A court cannot be clothed with authority to decree that a parent has deserted his child and forfeited his parental rights without notice to him." 76 ALR at 1075.

We think the foregoing is good law. Numerous other decisions to the same effect are collected in annotations in 76 ALR 1077 and 24 ALR 416. See, also, 2 Am Jur 2d 904, Adoption § 55.

█ It follows that the decree of adoption was void as to the natural mother of the petitioner and she could have attacked the decree collaterally, even though it may have been binding on the parties to the proceeding and their privies. *Beatty v. Davenport,*

45 Wash 555, 559, 88 P 1109, 122 Am St Rep 937; *Child Saving Institute v. Knobel,* supra; *Schiltz v. Roenitz,* 86 Wis 31, 56 NW 194, 39 Am St Rep 873, 21 LRA 483; *In re Estate of Zehner,* 130 Neb 375, 264 NW 891; *Ex parte Livingston,* 135 NYS 328, 151 App Div 1; *Hunter v. Bradshaw,* 209 Ind 71, 198 NE 73; *Norris v. Dunn,* supra. The mother died without having called the adoption decree in question; whether this was because she never learned of it or knew about it and was content, there is no way of telling. The question now is whether the son has the same right which his natural mother had but failed to exercise.

There are few cases in the books in which an adopted child has challenged the validity of his own adoption. This court permitted such an attack in *In re Estate of Myers,* supra. The question in that case was whether a second adoption was void because the adoptive father in the first proceeding had not given his consent to the later adoption and had not been given notice of that proceeding. The object of the child's attack on the second adoption was to inherit from her deceased adoptive father. Opposing her, the next of kin of the deceased claimed to be his sole heirs at law. The second decree was adjudged void on the authority of *Furgeson v. Jones,* supra, which held that where the consent of the parent to the adoption was required and he neither gave his consent nor was given notice of the proceedings jurisdiction of the subject matter never attached and the decree was void and subject to collateral attack by one claiming through the adoptive parent. See, also, *Dugger v. Lauless,* supra, 216 Or at 194. In the opinion on petition for rehearing in *Furgeson v. Jones* Mr. Justice LORD, speaking for the court, said:

"It is thus apparent that if the parents are

living *and do not belong to the excepted classes,* that their consent must be obtained and is a prerequisite to jurisdiction; that without such consent jurisdiction does not attach, and the court is without authority to act and make a decree of adoption, and if it undertakes to do so, its decree will be a nullity, not voidable but void, and may be collaterally assailed in any action." (Italics added.) 17 Or at 219.

The "excepted classes" are those enumerated in Oregon Laws 1920, § 9768. As there was jurisdiction of the subject matter here the *Myers* case is for that reason distinguishable. It is, however, authority for the right of an adopted child to challenge collaterally his own adoption.

We observe, parenthetically, that *Furgeson v. Jones,* insofar as it holds that kindred of the adoptive parent, notwithstanding they are in privity with one who invoked the jurisdiction of the court in order to procure a decree of adoption, may attack such decree, is contrary to the weight of modern authority, 2 Am Jur 2d 919-921, Adoption §§ 72-74. In that respect *Furgeson v. Jones* seems to have been overruled by what was said in *Allen v. Allen,* supra, 214 Or at 672. See, also, the concurring opinion in the same case at 681-682 and 685-686, and Vanfleet's Collateral Attack § 408.

Two decisions of District Courts of Appeals in California sustain the right of the adopted child to attack the decree—*Estate of Hampton,* 55 Cal App 2d 543, 567, 131 P2d 565; *Estate of Martin,* 86 Cal App 2d 474, 195 P2d 839. In both these cases there was failure to give notice to the parent in proceedings taken prior to the adoption proceedings. The opinion in the *Martin* case summarizes what was done:

"* * * In the Hampton case the parties used

the device of having the child declared abandoned, and given into the custody of an institution so that it could consent to the adoption. The mother was not notified of that proceeding. In the present case the parties used the device of having a guardian appointed so that the guardian could give the required consent. But the father was not notified." 86 Cal App 2d at 477.

The court concluded:

"* * * Under such circumstances there is no escape from the conclusion that the rule of the Hampton case permits the child to attack the validity of such an adoption proceeding." Idem.

In the *Hampton* case, after holding that failure to give notice to the mother rendered the proceedings void, the court said:

"* * * the respondent [the adopted child], who was the central figure therein and the person whose interests were mainly affected thereby, has the right to attack the decree entered which purports to thus interfere with her right of inheriting from her natural mother." 55 Cal App 2d at 563.

The court applied the rule that strangers to the record may attack a void judgment when, if the judgment were given full effect, some right in them would be affected by its enforcement. See 55 Cal App 2d at 568.[4]

In each of these cases the attack on the decree of adoption came some 37 years after the decree was entered; and in each the decree was held to be void as to the adopted child and, therefore, no obstacle to

---

[4] The court cited in support of this principle the following cases: Martin v. Fisher, 25 Ohio App 372, 158 NE 287; In re Connolly, 154 Misc 672, 278 NYS 32; Mitchell v. Auto. etc. Underwriters, 19 Cal 2d 1, 118 P2d 815, 137 ALR 923; In re Johnson, 98 Cal 531, 543, 33 P 460, 21 LRA 380, 539.

the child's claim to right of inheritance from the natural parent.

In *Dean v. Brown,* 216 Ark 761, 227 SW2d 623 (which will be referred to more fully in connection with another phase of the question) the court permitted collateral attack on an adoption decree by the adopted person 36 years after the decree was entered. There are two decisions and several dicta to the contrary. In *Slattery v. Hartford-Conn. Trust Co.,* 254 Mich 671, 236 NW 902, as in the two California cases just discussed, the defect in the proceedings was failure to give notice to a parent and, as in those cases and *Dean v. Brown,* supra, the purpose of the attack was to establish the right of the adopted child to inherit from his natural parent.

It appeared in the *Slattery* case that the adopted person was 42 years of age at the time he sought to vacate the decree, which had been entered 34 years previously. He had been aware of his adoption for 25 years. The father received no notice of the adoption proceedings, which were commenced by the mother, the parents of the child having been divorced at the time. In its opinion dismissing the suit, the court proceeded upon two grounds; first, that the decree could not be collaterally attacked by anyone and, second, that the adopted child could not question it. As to the latter point the court said:

> "If it be held that the father was entitled to notice, then he alone could complain of want of notice, and, for 34 years after the adoption and to the time of his death, he made no such complaint. The father never questioned the validity of the adoption, and, by lapse of time, he was barred from seeking revocation thereof, had he so desired, and plaintiff is equally barred." 254 Mich at 678.

The other case denying the right of the adopted child to attack the decree is a decision of the Surrogate's Court in *In re Oddo's Adoption,* 186 Misc 359, 59 NYS2d 612. The natural mother there consented to the adoption but the father did not consent and was given no notice of the proceeding. His consent was dispensed with on the theory that he had abandoned the child. Upon reaching the age of 16 the adopted child petitioned for an order to set aside the adoption. The court held that the father was entitled to notice, but that, since the child was under the age of 14 when the adoption order was granted and the statute did not require her consent, she could not be a party to a proceeding to vacate the order based on lack of notice to a natural parent or a failure of proof of abandonment by said parent. The court said: "The right of the natural father to challenge the adoption is a personal right which may not be exercised by others." The only authorities cited by the court were dicta in *Schiltz v. Roenitz,* supra, and *Ex parte Livingston,* supra. Similar dicta are to be found in *In re Estate of Zehner,* supra, and *Edwards v. Cockburn,* 264 Mass 112, 119, 162 NE 225. But in none of the cases where these dicta appear was the right of the adopted person to attack the decree involved.

The *Slattery* case was discussed in *Estate of Hampton,* supra, in connection with a claim of estoppel (see 55 Cal App 2d at 567) and distinctions in the facts of the two cases were pointed out. Assuming, without deciding, that delay can operate as an estoppel to attack a void judgment it could be so only if the delay were accompanied by knowledge of the facts. The record in this case discloses that the petitioner had no such knowledge until 1961, although he had been

told by his adopting parents at an undisclosed time that he was an adopted child.

The general rule as to collateral attack upon a judgment void upon its face is as stated in the *Hampton* case and is fully supported by the authorities there cited. (See footnote 4, supra.) See, also, 1 Freeman on Judgments (5th ed) 636-637, § 319, where it is said respecting strangers to a judgment:

> "Being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition."

■ The petitioner, who was an infant aged three years at the time of the adoption proceedings, was not, and could not have been, a party thereto, but was, as the court said in the *Hampton* case, "the central figure therein and the person whose interests were mainly affected thereby." We hold that he is entitled to attack the decree in this proceeding.

We come finally to Aetna's contention in support of the order of the court below based upon ORS 109.381 (Oregon Laws 1959, ch 609, §§ 2-6, inclusive) which reads:

> "(1) A decree of a court of this state granting an adoption, and the proceedings in such adoption matter, shall in all respects be entitled to the same presumptions and be as conclusive as if rendered by a court of record acting in all respects as a court of general jurisdiction and not by a court of special or inferior jurisdiction, and jurisdiction over the persons and the cause shall be presumed to exist.
>
> "(2) Except for such right of appeal as may be provided by law, decrees of adoption shall be

binding and conclusive upon all parties to the proceeding. No party nor anyone claiming by, through or under a party to an adoption proceeding, may for any reason, either by collateral or direct proceedings, question the validity of a decree of adoption entered by a court of competent jurisdiction of this or any other state.

"(3) After the expiration of one year from the entry of a decree of adoption in this state the validity of the adoption shall be binding on all persons, and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned him and consented to the entry of such decree of adoption, and that the child became the lawful child of the adoptive parents or parent at the time when the decree of adoption was rendered, all irrespective of jurisdictional or other defects in the adoption proceeding; after the expiration of such one-year period no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby; provided, however, the provisions of this subsection shall not affect such right of appeal from a decree of adoption as may be provided by law.

"(4) The provisions of this section shall apply to all adoption proceedings instituted in this state after August 5, 1959. This section shall also apply, after the expiration of one year from August 5, 1959, to all adoption proceedings instituted in this state before August 5, 1959."

 This statute has two aspects—in one it is a curative act, in the other a statute of limitations. As to the former, the general rule is that it is not competent for the legislature to validate a judgment void for want of jurisdiction and a statute purporting to have that effect would be unconstitutional, amounting to a denial of due process of law. If, however, the defect

in the proceedings is the omission of a requirement that could have validly been dispensed with in the first instance, the judgment may be validated by a retroactive law, subject to the restriction that it could not impair the obligation of a contract or a vested right. *Fredcrick v. Douglas Co. et al,* 176 Or 54, 66-67, 155 P2d 925; *Smith v. Cameron et al,* 123 Or 501, 506-507, 262 P 946; *Nottage v. City of Portland,* 35 Or 539, 548, 58 P 883, 76 Am St Rep 513; 2 Cooley's Constitutional Limitations (8th ed) 775-776; 16A CJS 131, Constitutional Law § 427; 11 Am Jur 1211-1212, Constitutional Law § 381. The requirement of Oregon Laws 1920, § 9830, that a copy of the order of permanent commitment of a child to an institution must be filed in the adoption proceedings is probably one that could have been validly omitted, but whether so or not, the statute cannot be applied to this case without violating the constitutional rights of the petitioner because in 1957, upon his mother's death, two years prior to the enactment of ORS 109.381, the petitioner's right to inherit his natural mother's estate had vested in him. *State of Oregon v. Black,* 193 Or 295, 311, 236 P2d 326; *In re Witherill's Estate,* 178 Or 253, 260, 166 P2d 129.

Aetna argues, however, that subsection (1) of ORS 109.381 does no more than provide a presumption of validity of adoption decrees, and since a presumption in this state is a species of evidence, *Wyckoff v. Mutual Life Ins. Co.,* 173 Or 592, 597, 147 P2d 227, and there is no vested right in a rule of evidence, *State v. Randolph,* 85 Or 172, 186, 166 P 555, no constitutional right of the petitioner would be impaired by applying the statute to this case. More pointedly, it is said, in substance, that the legislature, by enacting subsection (1), has repealed the rule of *Furgeson v.*

*Jones.* That it has done so validly as to future adoption proceedings there can be no doubt, but as much cannot be said of prior proceedings, for it is not competent for the legislature, by the device of construing a statute, to alter its meaning so as to affect vested rights, *Finlayson v. Peterson,* 5 ND 587, 67 NW 953, 33 LRA 532, 57 Am St Rep 584; *Baker v. Clowser,* 158 Iowa 156, 138 NW 837, 43 LRA NS 1056; *Greenough v. Greenough,* 11 Pa 489, 51 Am Dec 567; 11 Am Jur 1204, Constitutional Law § 375. *Furgeson v. Jones* and the cases that followed it announced the construction of the adoption statute of Oregon. To apply ORS 109.381 (1) to this case would be, as Chief Justice Gibson pointed out in the *Greenough* case, not only a violation of due process, but as well to give effect to an exercise of judicial power by the legislature.

■ By subsections (3) and (4) of ORS 109.381, it is provided, in substance, that actions to question decrees of adoption shall be barred if commenced after the expiration of one year from their entry, but if the adoption proceedings were instituted prior to August 5, 1959, then such an action must be brought within one year from August 5, 1959. That was the effective date of the act and, evidently, the provision as to prior proceedings was adopted in order to avoid the constitutional objection against cutting off remedies simultaneously with the passing of the limitations statute. See *Vance v. Vance,* 108 US 514, 517, 2 S Ct 584, 27 L Ed 808. But a judgment void on its face for want of jurisdiction is a nullity and should be vacated when called to the attention of the court. *Salitan et al v. Dashney et al,* 219 Or 553, 559, 347 P2d 974, 81 ALR2d 532, and cases there cited. See, also, *Lothstein v. Fitzpatrick,* 171 Or 648, 658, 138 P2d

919; *McLean v. Porter*, 148 Or 262, 271, 35 P2d 664. As stated in 49 CJS 880, Judgments § 449:

"Such a judgment may be attacked at any time by anyone, including the party in whose favor it is given, and may be impeached in any action, direct or collateral. It is not necessary to take any steps to vacate or avoid a void judgment; it may simply be ignored."

■ The courts therefore hold that a statute of limitations is not applicable to a judgment void upon its face. *Elliott v. Clement*, 175 Or 44, 58, 149 P2d 985, 151 P2d 739; *In re Randall's Estate*, 8 Wash 2d 622, 113 P2d 54; *Foster v. Foster*, 207 Ga 519, 63 SE2d 318; *Fooks' Executors v. Ghingher*, 172 Md 612, 192 A 782, cert den 302 US 726, 58 S Ct 47, 82 L Ed 561; 49 CJS 756, Judgments § 379.

19. In several of the states statutes imposing time limitations for attacking adoption proceedings similar to ORS 109.381 have been enacted. A review of cases construing these statutes may be found in 83 ALR2d 945, an Annotation to *Walter v. August*, 186 Cal App 2d 395, 8 Cal Rptr 778, 83 ALR2d 941. Of particular significance to the present question is *Dean v. Brown*, supra. In 1947 the Arkansas legislature amended its statute so as to provide that when (a) adopting parents had kept a child for two years under a court order and (b) no proceedings were filed within that time to challenge the order, then the adoption should be considered beyond attack. The amendment further allowed a period of six months from the effective date of the act to challenge adoption proceedings which occurred more than two years prior to such date. The facts in *Dean v. Brown* were as follows: Nettie Bond was adopted in 1911 when she was three years of age. An Arkansas statute provided that the adoption must

be made in the county in which the minor resides. This fact did not appear in the record of the adoption proceedings and the decree was held void for that reason. The adoptive mother died intestate in 1947, leaving an estate of both realty and personalty. This suit was between the adopted child and the nieces and nephews of the deceased who claimed to be her sole heirs at law. It appeared that the adoptive mother died before the effective date of the act. Under Arkansas law her real estate vested immediately in her heirs. The court held that the amended act could not operate retroactively so as to divest the next of kin of the real estate of the deceased. As to the personalty, however, the decision was for the adopted child because the title to the personal property of the deceased vested immediately in the personal representative and so remained at the time the attack on the decree of adoption was commenced by the next of kin and this was more than six months after the effective date of the act. The action of the next of kin was, therefore, held to be barred by the statute so far as the personal property was concerned.

*Dean v. Brown* was a case in which an adopted child was seeking to uphold rather than invalidate the adoption proceeding, but the principle upon which it was decided, that a statute of limitations cannot be made to apply validly to a void judgment, at least where to do so would be to interfere with vested rights, is fully applicable to this case, since the petitioner's right to his natural mother's estate, both real and personal, had fully vested before the enactment of ORS 109.381.

In *Walter v. August,* supra, the adoption decree was based on abandonment of the child and the defect in the proceedings was failure to give notice to the

child's natural parents who had not consented to the adoption. Over five years after the decree was entered the natural parents commenced a proceeding to have the decree set aside on grounds of fraud. The court held that the action was barred by a statute of limitation (enacted prior to the adoption proceedings) which provided a limitation of three years for attacking an adoption decree on procedural grounds and five years on any other ground. The court said that as to the natural parents the decree was not void, but voidable. "It would not be void in the sense that it could be treated as a nullity, or even attacked directly, by anyone except the child himself." It should be observed that in this case there was no question of vested rights and that, as the language just quoted from the opinion shows, the court expressly recognized the right of the child to treat the decree as a nullity. In answering the natural parents' contention that to apply the statute of limitation to the case would deprive them of due process, the court likened the possession of the child by the adoptive parents to constructive notice by adverse possession of land. A similar analogy was suggested in *Dean v. Brown,* supra. We think that there might be much reason and justice in the use of this analogy where the natural parents are attacking the adoption proceedings, but it could have no place where the child himself is seeking to have the decree of adoption set aside.

It is suggested by Aetna that the circuit court of Washington county lacked jurisdiction to set aside the adoption decree of Multnomah county. Inasmuch as the decree was a nullity so far as the petitioner is concerned, it was entitled to no respect, and, as the authorities already cited show, any court had jurisdiction to disregard it.

*Whetmore v. Fratello,* supra, cited by Aetna, is not in point. That case was a suit brought in the circuit court for Multnomah county to set aside an adoption decree rendered in the county court for Coos county. The ground of the suit was lack of notice to the father of the child who had been divorced from the mother. We held, affirming the circuit court, that, as the father had consented to the adoption, notice to him was not required and the decree was valid. The opinion went further to state that the suit was brought under what was then ORS 109.380, which provided that a parent who had not, before the hearing upon a petition for the adoption of his child, had personal notice thereof, might at any time within one year after actual notice apply to the circuit court to reverse the decree and that the circuit court after due notice might in its discretion reverse the same if it appeared that any of the material allegations in the petition were not true. This statute was said to be a limited remedy applicable only when it is made to appear that any of the material allegations of the petition were not true and that, manifestly, the circuit court referred to in the statute was the circuit court of the county in which the decree of adoption was entered and that no other court would have jurisdiction of the subject matter. What was said in that regard, therefore, was based entirely on a construction of the statute and has no relevance to the instant case.

■ We conclude that the petitioner was never legally adopted and, as the sole heir at law of Mona LaWanda Nelson, deceased, is entitled to inherit her estate.

The decree is reversed and the cause remanded for further proceedings in conformity with this opinion. No costs or disbursements will be allowed.