Argued and submitted September 16, 1992, reversed and remanded for new trial
February 10, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# KENNETH CLIVE ALVORD,
*Appellant.*

## (91-20231; CA A71484)

846 P2d 432

Marc A. Spence, Eugene, argued the cause for appellant. With him on the brief was Horton & Koenig, Eugene.

Janie M. Burcart, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

A jury convicted defendant of prostitution on the allegation that he knowingly offered or agreed to pay a fee to engage in sexual conduct or sexual contact. ORS 167.007(1)(b).[1] We reverse.

Defendant assigns error to the trial court's denial of his motion for judgment of acquittal. There was evidence that he offered to pay a fee for sexual conduct. ORS 167.007(1)(b). The trial court did not err.

Defendant also assigns error to the trial court's denial of his motion for mistrial based on the prosecutor's opening statement. In the opening statement, the prosecutor told the jury, after recounting a chronology of events leading to defendant's arrest:

"Officer Davis told [defendant] the reason why he stopped him, that—that is for prostitution activity, *he advised him of his Miranda rights, his right to remain silent* and those types of things. The defendant uh indicated that he had not done anything wrong. That all he had done was to ask this woman for a date. *He also indicated that* this was entrapment and that *he would let his lawyer do the talking*. The defendant was given a citation to appear in court and, uh, that was the end of Officer Davis's contact with him." (Emphasis supplied.)

Defendant moved for a mistrial. The trial court denied the motion but admonished the prosecutor.

Later, during the state's case-in-chief, the prosecutor asked Davis whether he had informed defendant of his *Miranda* rights. Davis responded that he had. The prosecutor continued:

Q: "Ok, did you ask whether he understood those rights?

A: "Yes.

Q: "And, how did he respond?

---

[1] ORS 167.007(1) provides, in part:

"A person commits the crime of prostitution if:

"* * * * *

"(b) The person pays or offers or agrees to pay a fee to engage in sexual conduct or sexual contact."

A: "He said he understood.

Q: "Ok. And did you, *did you ask him any questions about the incident that was under investigation?*

A: "I asked him if he had any comment to make uh, regarding this specific incident.

Q: "Ok. *And did he respond?*

A: "Yes, sir. He stated that, 'I didn't do anything, I just asked her if she wanted a date. This is entrapment.' And *then he refused to say anything else.*

Q: [interrupting after the word "then" was spoken] "That was after you ended your conversation?

A: "Yes, sir.

Q: "And what did you do then after having that conversation with him?

A: "I issued him a citation and released him." (Emphasis supplied.)

The state asks us to affirm defendant's conviction, because his brief violates ORAP 5.45(4) by failing to set out the pertinent portions of the record. Defendant's assignment of error is:

"The court erred in failing to grant Defendant's motion for mistrial where the prosecutor revealed to the jury during opening statement that the Defendant had said that he '* * * would let his lawyer do the talking.' "

Although defendant then failed to set out his motion for mistrial, the trial court's ruling on it or the audio transcript reference, he did quote the portion of the comment on the exercise of his right to remain silent and his right to counsel. Moreover, his statement of facts refers to the relevant audio tapes and the cue numbers showing that, after the prosecutor made the comment, his counsel moved for a mistrial and the court denied the motion. Therefore, we do not need to search the entire audio record to evaluate this assignment of error and we will consider it.

■ On the merits, the state concedes that defendant's statement that he would let his lawyer do the talking constitutes an invocation of the right to remain silent and that the prosecutor's comment was improper. The state nonetheless

argues that the prosecutor's comment was "a passing reference which was buried in the recitation of the events * * *." We disagree. The context in which the comment was made shows that it was likely to prejudice defendant's right to a fair trial. *See State v. White*, 303 Or 333, 341, 736 P2d 552 (1987). After reciting that the arresting officer read defendant his *Miranda* rights, including the right to remain silent and the right to a lawyer, the prosecutor proceeded to inform the jury that defendant then stated that he would let his lawyer do the talking. The prosecutor also stated that that was the end of the officer's contact with defendant. Thus, inadvertently or not, the prosecutor sent a clear message to the jury that defendant intended to retain an attorney and refused to talk. *See State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962); *see also State v. Grenawalt*, 86 Or App 96, 98, 738 P2d 232, *rev den* 304 Or 405 (1987).

■ ■　　The "presumably harmful effect" of an improper comment on a defendant's exercise of the right to remain silent may be cured by a proper instruction. *State v. White, supra*, 303 Or at 342. Although it is normally the defendant's duty to request a curative instruction, the Supreme Court has said that, when a prosecutor has made an improper statement about a defendant's exercise of the right to remain silent, the trial court has a duty to allow a timely motion for a mistrial or to cure the effect of the improper comment by giving a proper instruction. 303 Or at 343; *see also State v. Mullenburg*, 112 Or App 518, 521, 829 P2d 98 (1992). Despite defendant's failure to request a curative instruction, we conclude that the presumption of harm was not overcome, that a mistrial should have been granted and that the error was not waived by defendant's failure to request a curative instruction.[2]

■　　The state also argues that any harm that resulted from the prosecutor's statement was dissipated, because the officer later testified without objection to the effect that defendant had invoked his right to remain silent. The state's

---

[2] We note that, at the end of the trial, defendant requested, and the trial court gave, a general instruction to the effect that defendant had an absolute constitutional right not to testify and that his decision not to testify could not be considered an indication of guilt. UCrJI No. 1015. However, that instruction was pertinent only to defendant's decision not to testify at the trial and could not cure the prosecutor's opening statement. *See State v. Halford*, 101 Or App 660, 663, 792 P2d 467 (1990).

theory is that, by acquiescing in the admission of that evidence in the state's case-in-chief, "defendant cannot assert prejudice from the prosecutor's more oblique reference in [the] opening [statement]." We reject that argument. It was the prosecutor's duty, especially after making an improper opening statement for which he was admonished by the trial court, to make sure that he did not elicit any evidence concerning defendant's exercise of his constitutional rights. *See State v. Marple,* 98 Or App 662, 780 P2d 772 (1989). Instead, the prosecutor engaged in misconduct, even if unintended, by asking questions that reasonably led to the answer about defendant's refusal to talk about the incident. Consequently, the officer's testimony could not have dissipated the harm of the prosecutor's opening statement simply because there was no objection to the testimony.

The state argues finally that any error caused by the prosecutor's opening statement was harmless, because the record establishes defendant's guilt. Although the state does not specifically argue it, the best evidence we can glean from the record to support that claim is the arresting officer's testimony that defendant said that he had asked the undercover officer for a date. There was testimony that defendant had, in street language, solicited prostitution. However, his statement about "dating" alone was not so clear an admission of the crime as to make harmless the prosecutor's opening statement about the invocation of his right to remain silent. Moreover, the jury might have disbelieved the officer's testimony that defendant had offered to pay a fee for sexual contact. Had defendant admitted that he did offer to pay a fee and then only asserted a defense of renunciation, the error might have been harmless, because the crime would have been complete on the offer to pay. *See* n 1, *supra.* That is not this case.

This case is not materially different from *State v. Wederski, supra,* where the prosecutor made an indirect but improper closing comment on the defendant's failure to testify. 230 Or at 60. The state argued that the record as a whole established his guilt. The Supreme Court rejected that argument. 230 Or at 61. It said that, although there might be overwhelming evidence of guilt, it would not affirm the conviction on the ground of harmless error. To do so "would

encourage the wholesale destruction of the rights of the accused persons." 230 Or at 62.

Similarly, here, although there may be substantial evidence of defendant's guilt, the prosecutor made an opening statement that the state concedes was improper. We conclude that there was a likelihood that the prosecutor's statement affected the jury's verdict and that the error was not harmless beyond a reasonable doubt. *See Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705, *reh'g den* 386 US 987 (1967); *State v. Williams*, 313 Or 19, 56, 828 P2d 1006, *cert den* ____ US ____, 113 S Ct 171 (1992) (Unis, J., dissenting); *State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991).

We need not address defendant's other assignment of error.

Reversed and remanded for a new trial.