Argued and submitted July 2, reversed and remanded with instructions
October 31, 2001, petition for review allowed February 22, 2002, and on court's own
motion, the case is assigned to the Appellate Settlement Conference Program
(333 Or _____ )

Gary Lee MIDDLETON,
*Appellant,*

*v.*

Mary Jean CHANEY,
aka Jeannie M. Chaney,
Jerry Cummings and Patricia Cummings,
*Respondents.*

In the Matter of the Guardianship of

Brad Lee MIDDLETON,
*Ward.*

97-DR-1197; A108878

34 P3d 722

Ryan S. Joslin argued the cause for appellant. With him on the briefs was Kilpatricks Lawyers.

James M. Brown argued the cause for respondents Jerry and Patricia Cummings. With him on the brief was Enfield Brown Collins Knivila & Cook.

No appearance for respondent Mary Jean Chaney, aka Jeannie M. Chaney.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

This appeal arises from guardianship and child custody proceedings that were consolidated for trial. The trial court denied father's petition for custody of his biological child and ordered that the child continue indefinitely under the guardianship of mother's uncle and his wife (respondents).[1] Father appeals. We reverse and remand.

Child was born on July 2, 1990. Father and mother were not married, but father had accompanied mother to prenatal medical appointments, attended the birth and lived with mother and child for 10 months. At that point, father began a six-and-a-half year period of incarceration in state and federal prison for a variety of charges involving manufacture of drugs. During his first two years in prison, he maintained regular direct contact with child, frequently calling, writing letters and sending gifts. Thereafter, his relationship with mother deteriorated, and he began to communicate with child only through mother's sister-in-law. Meanwhile, father became increasingly aware that mother was neglecting child. He attempted to find somebody to intervene but was not successful.

In August 1996, respondents took child on a fishing trip. They were alarmed at his condition; his teeth were rotting, and he appeared undernourished. At the end of the three-week trip, at the request of mother, respondents took child to live with them near Vancouver, Washington. Almost immediately thereafter, on September 12, 1996, they petitioned to have themselves appointed child's guardians. Mother did not oppose the guardianship; indeed, she encouraged it. The petition was granted on October 30, 1996, and child has lived with respondents since that time.

Respondent Jerry Cummings testified that respondents petitioned for guardianship so soon after the fishing trip because they wanted to have child covered under their medical insurance plan and to enroll him in school. Perhaps

---

[1] Mother did not appear at trial, and a default was entered against her. She does not appeal.

as a consequence of their haste, however, they did not perform their statutory duty to inform father of the impending proceedings. Under Oregon law, before a petitioner may lawfully establish guardianship of a minor, the petitioner must notify the child's parents by personal service. ORS 125.060; ORS 125.065(1). The petitioner has a duty to "exercise * * * reasonable diligence" in attempting to ascertain the identity and address of the parents, and if the diligent search does not succeed the petitioner must attempt notice by publication. ORS 125.060, ORS 125.065(2). Respondents here limited their inquiry to examination of the birth certificate, which indicated "the father unknown," and, according to them, a single question to mother, who replied that she "didn't really know" who father was. (In deposition testimony reported at trial, mother asserted that respondents never asked her who child's father was. Because mother did not appear, her credibility was never addressed.) In any event, respondents did not make any inquiries based on their knowledge that child's last name was listed on the birth certificate and was not the same as mother's, they did not contact any of mother's family, who lived nearby and many of whom knew the identity and whereabouts of father, and they did not attempt notice by publication. When asked to explain this inaction, respondent Jerry Cummings testified:

> "[D]ue to [child's] health and stuff and the reason we wanted guardianship at that time, we didn't pursue it further[.]
>
> "* * * * *
>
> "[D]ue to his health and stuff I really wasn't concerned of anything but the child's health. So rather than to continue on and let his health deteriorate further than what it was at that point, I did not [make other attempts to ascertain father's identity].
>
> "* * * * *
>
> "[D]ue to his health I—[it] wasn't time to play a game."

When father discovered that child was living with respondents, he telephoned them, and respondents evidently reacted with hostility; they subsequently arranged with prison authorities to have their telephone number removed

from the list that father was permitted to call, thereby preventing father from communicating by telephone with child.

Father was transferred from prison to a community correction facility in July 1997. While there, he filed *pro se* a petition for custody and motion to terminate respondents' guardianship. He was released from community corrections in December 1997 and began working as an electrician, a trade for which he had been trained while incarcerated. He filed a motion for summary judgment in October 1998, repeating his arguments against respondents' guardianship and in favor of receiving custody. Although it was unopposed, the motion was denied. Before trial, father and respondents attempted to resolve the issues surrounding child through mediation, but they could not reach an agreement. The trial occurred on May 1, 1999. The court denied father's petition for custody and continued respondents' guardianship indefinitely.

■ On appeal, father argues first that the guardianship should be declared void and custody consequently awarded to him because respondents did not comply with the statutory notice requirements. He also maintains that, even if the failure of notice is not dispositive, we should dismiss the guardianship and award him custody because the trial court based its decision on the "best interest of the child," without recognizing father's right, as a biological parent, to a more demanding standard. A third assignment of error relates to the trial court's denial of his unopposed summary judgment motion. Because we find respondents' failure to notify father fatal to their guardianship, we do not reach the second or third assignments.

Respondents do not argue that their efforts to locate and notify father met the statutory requirement of a diligent search. Instead, they raise a number of less direct arguments. None is persuasive.

First, respondents argue that father failed to preserve the lack of notice issue because his brief failed to provide "the court with any particularity as to when or how the issue was presented or decided." We disagree. Father's assignment of error explicitly raises the issue and indicates

that he raised it below "in [his] trial memorandum, page 5[.]" He also raised the issue in his motion for summary judgment.

■ Respondents next argue that, because father's assignment does not quote a trial court ruling on the notice issue, "[i]t is * * * difficult at best to discern that the trial court actually ruled on the claim," and we should ignore the assignment on that basis. It is true that father's assignment does not contain a verbatim quote of the trial court's ruling on the notice issue. That is because the trial court's oral ruling on the summary judgment motion, as well as its post-trial letter opinion and order, deal only with the "best interest" issue. The trial court's decision against father on the notice issue was only implicit (it would not have reached the best interest issue had it decided the notice issue in father's favor), and father cannot be faulted for failing to quote the precise language of a ruling that was not articulated. Further, failure to set out verbatim portions of the record as required by the rules of appellate procedure need not be fatal. *State v. Alvord*, 118 Or App 111, 114, 846 P2d 432 (1993). The lack of notice issue was sufficiently preserved and assigned as error.

■ Respondents next argue that, even if the notice issue was properly preserved and assigned as error, they should prevail anyway under a "substantial compliance" theory. Again, we cannot agree. We do agree with respondents that *McComas v. Employment Dept.*, 133 Or App 577, 891 P2d 1351, *rev den* 321 Or 246 (1995), provides clear guidance, but it helps father, not them. In *McComas,* the state failed to send notice to a person's last known address as required by law, but the person received actual notice and therefore suffered no prejudice. In holding that the state's notice substantially complied, the court held:

> " 'The sufficiency of the notice given must be determined with the object of the statute in mind and technically deficient claims should not be barred where the purpose of the statute is served. * * * The doctrine of substantial compliance has previously been used by this court to avoid the harsh results of insisting on literal compliance with statutory notice requirements where the purpose of the requirements has been met.' " *McComas,* 133 Or App at 580 (quoting *Brown v. Portland School Dist. #1,* 291 Or 77, 81, 628 P2d 1183 (1981)).

Here, father did not receive actual notice of the guardianship hearing until well after it had occurred. He was therefore deprived not only of the opportunity to argue that no guardianship was necessary in the circumstances—an argument he probably would have lost—but he was also deprived of the opportunity to argue that some person or persons other than respondents should be appointed. With respect to biological parents, the obvious purpose of ORS 125.060 *et seq.* is to allow participation in the proceeding that determines at least temporarily the fate of their child. Lack of notice to father, therefore, was much more than a technical deficiency that did not interfere with the purpose of the statute: It was a significant, prejudicial error that utterly negated that purpose. Respondents did not substantially comply.

■ Finally, respondents argue that father waived any claim he might have had based on lack of notice of the guardianship hearing when he participated in the later hearing on the merits. Respondents cite no authority for this argument, and we can find none. Surely father did not waive his right to oppose the guardianship based on lack of notice when he "failed" to do so at the hearing of which respondents failed to notify him. Instead, he directly attacked the validity of the guardianship based on lack of notice at his first opportunity, that is, in his original *pro se* petition. He repeated that attack in his summary judgment motion and at trial. No waiver occurred.

■ The guardianship statutes do not specify the consequences of failure to notify a parent. Case law, however, provides guidance. In *Hughes v. Aetna Casualty Co.*, 234 Or 426, 383 P2d 55 (1963), the court confronted a similar problem in the context of an adoption. A statute required the court to order that a nonconsenting parent be personally served with notice of a pending adoption, even if the parent was accused of neglect, and, if the parent could not be found, that notice by publication occur once per week for three weeks. *Id.* at 440, *quoting* Oregon Laws, v II, title LI, ch IV, § 9769, p 3505 (1920). Such notice had not occurred. The court noted that "due process required notice to the mother," *id.*, and concluded:

"It follows that the decree of adoption was void as to the natural mother * * * and she could have attacked the decree collaterally, even though it may have been binding on the parties to the proceeding and their privies." *Id.* at 441.

We conclude that the same outcome results here from the failure to notify father of the guardianship proceedings: the order establishing respondents as guardians of his child is void as to him. That being the case, father has custody. *Iremonger v. Michelson,* 97 Or App 60, 775 P2d 860 (1989).

Reversed and remanded with instructions to set aside guardianship and enter judgment granting custody to father.