Submitted March 22, affirmed August 15, 2012, *rev den*, 353 Or 209 (2013)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN DEWAIN DALBY,
aka Justin Dewaine Dalby,
*Defendant-Appellant.*

Multnomah County Circuit Court
090950677; A145216

284 P3d 585

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals from a judgment convicting him of possessing a controlled substance. He assigns error to the court's denial of his motion for a mistrial after the prosecutor elicited testimony from the arresting officer that, first, defendant "refused to talk to me," and second, that "[h]e invoked his right to speak with counsel." According to defendant, those statements violated his constitutional right to remain silent and resulted in an unfair trial. The state does not deny that admitting the statements violated defendant's right to remain silent; it argues, however, that the trial court's denial of defendant's motion for a mistrial was not error for three reasons: the testimony was not elicited intentionally, defendant did not request a curative instruction, and the evidence was not so prejudicial that it deprived defendant of a fair trial. We affirm.

As the result of an incident in downtown Portland, defendant was charged with resisting arrest, failure to appear, and possession of a controlled substance (PCS). The court granted defendant's motion for a judgment of acquittal on the failure to appear charge. The two remaining charges went to the jury, which acquitted defendant of resisting arrest and found him guilty of PCS.

The events that gave rise to this case occurred in August 2009. A Portland Police Officer noticed defendant standing with a group of people in the South Park Blocks. Defendant was wearing clothing that matched the clothing worn by a man whom the officers were looking for in relation to an incident unrelated to the charges in this case. In the process of questioning, patting down, and handcuffing defendant, three events of note took place; first, as the result of a consent search, police found defendant in possession of a glass pipe containing what was later determined to be crack cocaine; second, defendant told the officer who was searching him that the pipe was not his but something that he had picked up off the ground; and third, a scuffle occurred, during which police tackled defendant, who was handcuffed at the time, and an officer held defendant on the ground by pressing his knee on defendant's temple, thereby exacerbating a recent and unhealed jaw injury and causing

defendant to bleed from the mouth. A witness made a 9-1-1 call to report that police were kicking defendant in the face, and the officers were aware of the 9-1-1 call. Defendant was sufficiently injured to require transportation to a hospital. While there, another scuffle ensued, during which the police once again "took him to the ground."

Defendant's assignments of error focus on two statements by one of the officers on direct examination at defendant's trial. In response to the question, "And then did you end up talking to [defendant] again," the officer responded: "I *Mirandized* [defendant], and he refused to talk to me." Defendant did not object to that statement. Very shortly thereafter, the following colloquy took place:

"Q: [by prosecutor] And while you were on the way [to the hospital] what was [defendant's] demeanor?

"A: [by witness]  He was angry.

"Q: Did he mention anything about a broken jaw?

"A: He did.

"* * * * *

"Q: And how did that come up?

"A: Well, we were on the way to the hospital and—let me refresh my memory here. Again, I wasn't questioning him. He was just—He was spouting and spewing at me. I mean I had no interest in actually doing an interview of this person because he was so upset and irrational.

"Q: *Officer, just to clarify, that's not the only reason you couldn't ask him questions, right?*

"A: *Right. He invoked his right to speak with counsel.*

"[DEFENSE ATTORNEY]:  Judge, objection. I have a matter for the court."

(Emphasis added.) Defendant moved for a mistrial. The court denied the motion. It is that denial to which defendant assigns error on appeal.

The state does not deny, nor could it, that the officer's statements were comments on defendant's exercise and invocation of his right to remain silent, as guaranteed

by Article I, sections 11 and 12, of the Oregon Constitution. Nor does the state, nor could it, deny that it is error for a prosecutor to elicit such statements during the state's case-in-chief. *State v. Alvord*, 118 Or App 111, 116, 846 P2d 432 (1993). Finally, the state does not contend that defendant failed to preserve his claim of error, *i.e.*, the claim that the court erred in denying his motion for a mistrial, even though the motion was based on two statements and defendant objected only to the second.[1] Rather, as noted, the state relies on three arguments. We address them in turn.

First, the state maintains that "the testimony was not elicited intentionally." We disagree, at least with respect to the second statement. It was elicited, we repeat, as follows:

"[PROSECUTOR]:   Officer, just to clarify, that's not the only reason you couldn't ask him questions, right?

"A:   Right. He invoked his right to speak with counsel."

We are unable to conceive of anything the prosecutor could have intended to elicit *other than* the unlawful comment on defendant's invocation of his rights. If the prosecutor did not know that his question would unlawfully elicit such a comment, he should have anticipated that it would.

Second, the state contends that denying defendant's motion was not a reversible abuse of discretion because defendant did not request a curative instruction. It is true that we have noted that a defendant's failure to request a curative instruction is a factor that we can consider in deciding whether a trial court erred in not granting a mistrial. *State v. Nguyen*, 117 Or App 219, 222, 843 P2d 990 (1992), *rev den*, 315 Or 443 (1993). However, we have also held that such a failure is not dispositive:

"The 'presumably harmful effect' of an improper comment on a defendant's exercise of the right to remain silent may

---

[1] The state does contend, and we agree, that the court had no obligation *sua sponte* to grant a mistrial after the first objectionable statement, that is, in the interval between that statement and the one to which defendant did object. We also agree with the state, however, that "defense counsel and the court treated the motion as applying to both [the later statement] and [the officer's] earlier statement that defendant refused to talk to him. Thus, defendant's claim that the trial court abused its discretion in denying his motion for a mistrial is preserved."

be cured by a proper instruction. Although it is normally the defendant's duty to request a curative instruction, the Supreme Court has said that, when a prosecutor has made an improper statement about a defendant's exercise of the right to remain silent, the trial court has a duty to allow a timely motion for a mistrial or to cure the effect of the improper comment by giving a proper instruction. Despite defendant's failure to request a curative instruction, we conclude that the presumption of harm was not overcome, that a mistrial should have been granted and that the error was not waived by defendant's failure to request a curative instruction."

*Alvord*, 118 Or App at 115 (citations omitted).

Thus, the state's first argument is incorrect; in fact, if anything, it supports defendant's position. Its second argument is not, by itself, persuasive. The case rises or falls on the third argument, *i.e.*, that we should affirm because the court's error in denying the motion for a mistrial was harmless. Or Const, Art VII (Amended), § 3; ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party.").

In *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003), the Supreme Court announced the standard for harmless error analysis and review:

"Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."

Several aspects of the present case militate in favor of finding that the erroneous admission of evidence regarding defendant's invocation of his constitutional rights was, in fact, prejudicial. Although Oregon does not regard any error as "structural," that is, automatically and under every circumstance reversible, *Ryan v. Palmateer*, 338 Or 278, 296, 108 P3d 1127, *cert den*, 546 US 874 (2005), the constitutional error inherent in mentioning to a jury that a defendant exercised and invoked the right to remain silent is "presumably" harmful, *State v. Wederski*, 230 Or 57, 60,

368 P2d 393 (1962). Further, in summarizing his closing argument to the jury, the prosecutor staked the outcome of this case on the credibility of the police officers:

"[PROSECUTOR]:   Lastly, ladies and gentlemen, this case boils down to really one thing. It boils down to whether you believe—

"[DEFENSE ATTORNEY]:   Objection; beyond the scope.

"THE COURT:   Overruled.

"[PROSECUTOR]:   [CG], who we've heard from twice, ten-year veteran, comes down to whether you believe [RH], played baseball at OSU, who left his private sector job to become a police officer, whether you believe [JM], tall guy, North Face jacket, who still handwrites[.] *** Do you believe [CP], who's from Hawaii, who told you that he was over addressing bystanders, explaining to them what happened, that he gave them his card with a phone number for Internal Affairs, the phone number of the Citizen Complaint Board, and that if they wanted to call they're more than welcome to, who also said, when I asked him—remember when I asked him, 'Do you have any legal obligation? Are you told to do it?' he said, 'No.'

"[DEFENSE COUNSEL]:   Objection again; beyond the scope.

"THE COURT:   Overruled.

"[PROSECUTOR]:   Do you believe [CP]? Finally—excuse the handwriting—do you believe [FS]? Ladies and gentlemen, if you believe these Portland police officers, you must find the defendant guilty. Thank you."

At least with respect to the only seriously disputed fact issue in the case—whether police exerted force on defendant gratuitously, or in order to overcome resistance—the jury did *not* believe the police officers. Because the only evidence that the officers found the controlled substance on defendant came from officers' testimony, it is conceivable that the jurors were persuaded to believe the evidence because they learned that defendant had exercised and invoked his right to remain silent and retain an attorney.

Conceivable, however, is not the same as "likely." Error in admitting evidence that a defendant exercised or

invoked his constitutional right to silence or to counsel is prejudicial if the evidence comes "'in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.'" *State v. White,* 303 Or 333, 341, 736 P2d 552 (1987) (quoting *State v. Smallwood,* 277 Or 503, 505-06, 561 P2d 600, *cert den,* 434 US 849 (1977)).

The focus of the trial was on the resisting arrest charge; that issue took up well over 350 of the transcript's 420 pages, and, more importantly, the pages that were devoted to PCS focused almost entirely on such matters as a far-fetched and ultimately abandoned chain of custody objection (defense theory, presented outside of the jury's presence: one of the officers "may well, at some point, [have] put a pipe and a pill into a bag and submitted it to the State Crime Lab"); the qualifications of the expert who tested the residue found in the pipe; the scientific validity of the test; and the calibration and maintenance of the testing machine. The only evidence that the jury heard regarding defendant's possession of the pipe was uncontradicted (and unobjected to) testimony from a police officer that defendant claimed he picked up the pipe off of the street. Defendant himself did not testify, nor did defense counsel argue to the jury at any point that defendant did *not* possess the pipe or the pipe did *not* contain crack cocaine residue. In that context, it is unlikely that the jury drew the inference that defendant exercised or invoked his rights because he did not want to be questioned about the pipe or its contents—the only facts on which his PCS conviction was based.

Further, defendant's argument that, because of the erroneously admitted evidence, he did not receive a fair trial, is belied by the fact that the jury *acquitted* him of the charge to which he devoted the bulk of his defense.

In sum, we conclude that the error, while egregious, did not likely have any effect on the verdict. We therefore affirm.

Affirmed.